UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAFWAN SALMAN,

       Plaintiff,

v.

CHRISTOPHER PERRY, et al.,

       Defendants.

_____/

Case No. 2:23-cv-11588
Hon. Brandy R. McMillion
United States District Court

**<u>OPINION AND ORDER DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF NO. 34) AND GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NO. 36)</u>**

Before the Court are two motions: (1) Plaintiff Safwan Salman's ("Salman") Amended Motion for Summary Judgment (ECF No. 34); and (2) Defendants Christopher Perry ("Perry"), Robert Larkin ("Larkin"), Randy Dyer ("Dyer"), and Troy A. Miller's ("Miller") (together, "Defendants") Cross-Motion for Summary Judgment (ECF No. 36). The Motions have been adequately briefed so the Court will rule without a hearing. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court **DENIES** Plaintiff's Motion (ECF No. 34) and **GRANTS** Defendants' Cross-Motion (ECF No. 36).

1

## I.

In late January 2023, Delta Airlines hired Plaintiff Safwan Salman to work on the tarmac at Detroit Metropolitan Airport. ECF No. 34-2, PageID.437-439. Pursuant to his employment, he needed a certain security clearance seal to access the tarmac and other secured areas of Detroit Metropolitan Airport, so he applied for the seal in early February 2023. *See id.* at PageID.437-442. His application was denied. ECF No. 34-3, PageID.444. Defendant Robert Larkin, the Detroit Metro Area Port Director of U.S. Customs and Border Protection ("CBP"), issued a denial letter dated February 14, 2023. *See id.* As the reason for denying Salman's application, Larkin quoted verbatim the language of 19 C.F.R. § 122.183(a), an applicable CBP regulation (the "Regulation"):

> 19 CFR 122.183(a) Access to the Customs security area will not be granted, and therefore an approved Customs access seal will not be issued, to any person whose access to the Customs security area will, in the judgment of the port director, endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety.

ECF No. 34-3, PageID.444.

Salman appealed this decision internally on February 18, 2023. ECF No. 34-4, PageID.446. In response to the appeal, Larkin sent Salman another denial letter, dated February 24, 2023. *See* ECF No. 34-5. Larkin explained that he was

"uphold[ing his] initial decision" to deny Salman's application, again quoting § 122.183(a) as the basis for the denial.  ECF No. 34-5, PageID.448.

On March 9, 2023, Salman, through his current attorney, filed another administrative appeal.  *See* ECF No. 34-6.  Salman took issue with the language of his denial, asserting that it "fail[ed] to provide any detailed information regarding the rationale, specific rationale or factual basis for the denial of his application" and only provided a "boilerplate" recitation of the Regulation as the basis for the denial.  *Id.* at PageID.450-451.  He also asserted that using the "boiler plate language of § 122.183(a)" without specific grounds supporting the denial does not comply with § 122.183 generally.  *Id.* at PageID.451.  On May 15, 2023, Defendant Christopher Perry, the Director of Field Operations in the Detroit CBP office, denied the appeal. ECF No. 34-7, PageID.454.  Perry's denial letter contained language tracking the same language in the first denial letters and expressing Perry's "concurrence with" Larkin in denying Salman's seal application.  *Id.*

Salman then filed a petition for mandamus in this Court in early July 2023. ECF No. 1.  That led Defendants to move for dismissal because Salman couldn't meet the requirements for mandamus relief, most notably that he had an alternative, adequate remedy: a civil action under the Administrative Procedure Act ("APA"). ECF No. 12.  After a hearing on the motion to dismiss in late May 2024, the Court found that Salman had failed to state a claim for mandamus relief but granted him

3

leave to amend his complaint to "add the adequate remedies available to him, including a stand-alone APA claim." ECF No. 19, PageID.119-123.  Salman did just that, filing his APA-based Amended Complaint in mid-June 2024.  ECF No. 20.  Defendants answered the Amended Complaint in mid-July 2024.  ECF No. 24.  The parties then filed cross-motions for summary judgment that are now fully briefed.  ECF Nos. 34, 36, 37, 38.  Having reviewed the parties' briefs, the Court finds oral argument unnecessary and will decide the Motion based on the record before it.  *See* E.D. Mich. LR 7.1(f).

## II.

When a party moves for summary judgment, it must show there's no genuine dispute on any material fact and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the nonmoving party only when there exists "a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  And "[w]here the record taken as a whole could not lead a rational trier of

4

fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. *Scott*, 550 U.S. at 380; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Scott*, 550 U.S. at 380 (quoting *Matsushita*, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *Scott*, 550 U.S. at 380 (quoting *Anderson*, 477 U.S. at 247-248). The court does not weigh the evidence to determine the truth of the matter but must decide if the evidence produced creates a genuine issue for trial. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).

When evaluating cross-motions for summary judgment, the Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in

5

favor of either party is not proper if disputes remain as to material facts." *Id.* (citations omitted).

## III.

### A. Sufficient Explanation For Denial

Salman argues that Defendants failed to comply with 19 C.F.R. § 122.183 by denying his application for a security access seal without "fully stating the reasons for the denial." *See* ECF No. 34, PageID.408-409, 426-429. The Regulation, Salman argues, required Defendants to provide "detailed reasons" for the denial, meaning they couldn't rely on the boilerplate language of the Regulation to deny his application. *Id.* Defendants, on the other hand, argue that they complied with the Regulation and provided Salman a sufficient explanation. ECF No. 36, PageID.478-484. The Court agrees with Salman.

The APA outlines "the procedures by which federal agencies are accountable to the public and their actions are subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted). Under it, agencies must "engage in reasoned decisionmaking" and courts must "set aside" any "arbitrary" or "capricious" agency action. *Id.* (quotation marks and citations omitted).

Section 706 of the APA articulates a court's duty when reviewing agency action, stating that the court "shall . . . hold unlawful and set aside [any] agency

6

action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or "*without observance of procedure required by law*." 5 U.S.C. § 706(2)(A), (C), (D) (emphasis added). Important here, agencies are bound to follow their own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). This latter principle has come to be known as the *Accardi* doctrine, and it allows a party to "challenge an agency's failure to abide by its own regulations." *Burdue v. F.A.A.*, 774 F.3d 1076, 1082 n.2 (6th Cir. 2014).

CBP denied Salman's application for a Customs access seal under 19 C.F.R. § 122.183(a), which states in relevant part:

> Grounds for denial. Access to the Customs security area will not be granted, and therefore an approved Customs access seal will not be issued, to any person whose access to the Customs security area will, in the judgment of the port director, endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety.

The Regulation then provides six "[s]pecific grounds for denial of access to the Customs security area," one of which has 37 subgrounds (and one of those has 10 subgrounds of its own). *See* 19 C.F.R. § 122.183(a)(1)-(6).

When notifying an applicant of a denial, § 122.183 also requires CBP to fully state the reasons for the denial:

7

>    (b) Notification of denial. The port director shall give written notification to any person whose application for access to the Customs security area has been denied, fully stating the reasons for denial and setting forth specific appeal procedures. The employer shall be notified in writing that the applicant has been denied access to the area and that the detailed reasons for the denial have been furnished to the applicant. Detailed reasons regarding the denial, however, shall not be furnished to the employer by Customs.

19 C.F.R. § 122.183(b). And 19 C.F.R. § 122.183(c) and (d) outline the appeal procedures for both the denied applicant and relevant members of the CBP (the port director and the director of field operations).

The Court finds that Defendants failed to abide by the Regulation when they neglected to "fully state" the detailed reasons they denied Salman's access seal application. 19 C.F.R. § 122.183(b). Though Defendants argue that reciting the language of § 122.183(a) conveyed an appropriate amount of information to Salman for purposes of explaining the denial of his application, *see* ECF No. 36, PageID.478-484, the Court disagrees. Section 122.183 serves at least two purposes. First, it provides Customs grounds for denying an access seal and the steps it must take in doing so. *See generally* 19 C.F.R. § 122.183 (detailing grounds for denial and requirements for notifying the applicant of the denial while also outlining an appeal procedure with instructions to both the applicant and port director). Second, it provides the applicant notice of the reasons their application was denied; describes the procedure for appealing that denial; and outlines the obligations of CBP in processing an appeal. *See generally id.* But to meaningfully respond and comply

with the appellate procedures, the applicant must be able to discern the basis for the denial. *See, e.g.* 19 C.F.R. § 122.183(c) (requiring the applicant's notice of appeal to "set forth the response of the applicant to the statement of the port director"). And while reference to a specific provision of the Regulation may alert the applicant to the potential grounds, quoting the broad introductory sentence in its entirety doesn't provide narrow enough information to allow an applicant to file a meaningful response. *See* 19 C.F.R. § 122.183(b) (requiring the port director to provide written notification of denial that must "fully state the reasons for denial"). These purposes undergird the Court's analysis.

The Court thus reads the requirements of § 122.183 different from Defendants. Section 122.183(b), which requires the full statement of the reasons for denial, also requires CBP to notify the applicant's employer of the denial and must state "that the detailed reasons for the denial have been furnished to the applicant." 19 C.F.R. § 122.183(b). Though subsection (b) bars CBP from giving the employer the "[d]etailed reasons regarding the denial," it demonstrates that when "fully stating the reasons for denial" in a letter to the applicant, those reasons must be "detailed." *Id.* In broad terms, the applicant can't figure out the basis for their denial if CBP includes all the reasons in the Regulation. That is, they can't determine if they were denied for a potential risk of endangering the revenue of the area or the security of the area; or if they posed an unacceptable risk to public health, to public interest, to

9

public safety, to national security, or to aviation safety. But even more specifically, it doesn't tell them if they were being denied for one of the many "[s]pecific" grounds (or subgrounds) in § 122.183(a). The Court therefore concludes that Defendants failed to comply with the Regulation.

Resisting Salman's argument that their explanation was insufficient, Defendants urge the Court to follow the Sixth Circuit's decision in *Amiri v. Sec'y, Dep't of Homeland Sec.*, 818 F. App'x 523 (6th Cir. 2020). See ECF No. 36, PageID.479-480. *Amiri* involved the denial of a foreign national's visa application under 8 U.S.C. § 1182(a)(3)(B), a provision of the Immigration and Nationality Act ("INA") that renders inadmissible those suspected of terrorist activity, as well as the doctrine of consular non-reviewability. The *Amiri* court concluded that the government's citation to § 1182(a)(3)(B) in denying the plaintiff's visa application—absent allegations of bad faith—was "all that [was] required . . . to insulate the visa decision" under the consular non-reviewability doctrine. *Amiri*, 818 F. App'x at 530-31. In doing so, the Sixth Circuit relied on Justice Kennedy's concurrence in *Kerry v. Din*, 576 U.S. 86 (2015), which, given the plurality opinion in that case, is considered the narrowest and, thus, controlling opinion. *See Amiri*, 818 F. App'x at 527. In his concurrence, Justice Kennedy noted that § 1182(a)(3)(B) "establish[es] specific criteria for determining terrorism-related inadmissibility" and concluded that citation to § 1182(a)(3)(B) was sufficient to provide a facially legitimate and

10

bona fide reason for the visa denial. *See Din*, 576 U.S. at 104-06. This, Justice Kennedy explained, was because § 1182(a)(3)(B) "specifies discrete factual predicates the consular officer must find to exist before denying a visa," *Din*, 576 U.S. at 105, so "there must have been a bona fide factual basis to deny the visa," under the consular non-reviewability doctrine. *Amiri*, 818 F. App'x at 527.

The lack of case law interpreting § 122.183 leads the Court to find *Amiri* and *Din* persuasive but supportive of both parties, not just Defendants.[1] Start with the support for Salman. In the Court's view, *Amiri* and *Din* reinforce the conclusion that Defendants' explanation for the denial of Salman's application wasn't sufficient. Both cases involved citation to a specific provision of the INA—the "terrorist activities" provision (8 U.S.C. § 1182(a)(3)(B))—as the basis for denying a visa application. Though the statutory provision included numerous subgrounds that qualified as "terrorist activity," the applicants in each case could easily discern the basis of their denial—they were suspected of being involved in some form of terrorism. Compare that to here, where Salman can't tell if he was denied because the port director concluded he would "endanger the revenue or the security" of the Customs security area, or if he would "pose an unacceptable risk" to the public

---

[1] *Cardona-Colón v. U.S. Citizenship & Immigration Servs. Director*, No. 2017-0040, 2021 WL 1235126 (D.V.I. Mar. 31, 2021), and *Rodriguez v. United States*, 336 F. Supp. 3d 1051 (D. Ariz. 2018), two cases Salman cites, were, though distinguishable in certain ways, persuasive and informed the Court's analysis here.

11

health, the public interest, the public safety, to national security, or to aviation safety. *See* 19 C.F.R. § 122.183(a). Unlike the citation to § 1182(a)(3)(B) in *Amiri* and *Din*, citation to the general language of § 122.183(a) doesn't imply any specific and "necessary factual predicates were met." *Amiri*, 818 F. App'x at 529 (citing *Din*, 576 U.S. at 103-06); *see also Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016) (explaining that to establish a bona fide reason for denial the consular officer must "cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility.") (quoting *Din*, 576 U.S. at 105). The Court takes from this that Defendants had to provide more than the general language in § 122.183(a).

This point is strengthened by the Federal Circuit's decision in *Cheney v. Dep't of Justice*, 479 F.3d 1343, 1352 (Fed. Cir. 2007). There, the court evaluated a statute requiring "specific reasons" for the suspension of a security clearance. *Id.* at 1348-49. Though dealing with an individual with a protected interest and involving a different regulatory scheme (as Defendants point out), the lack of authority interpreting § 122.183 leads the Court to find *Cheney* analogous enough to be persuasive here. Under *Cheney* and the statute relevant there (5 U.S.C. § 7513), an employee facing a possible suspension of their security clearance must have received notice that "provide[d] the employee with an adequate opportunity to make a

12

meaningful reply to the agency before being suspended." *Cheney*, 479 F.3d at 1352 (quotation marks and citation omitted). "In other words, the employee must be given enough information to enable him or her to make a meaningful response to the agency's proposed suspension of the security clearance." *Id.*; *see Rodriguez v. United States*, 336 F. Supp. 3d 1051, 1060 (D. Ariz. 2018) ("A denial letter needs to be detailed in a way that allows Rodriguez to meaningfully respond.") (citing *Cheney*, 479 F.3d at 1352).

The same should apply here. The Regulation provides specific factual predicates for denying an access seal application. Defendants, therefore, had to provide more specific reasoning for their denial of Salman's application to comply with the notice requirements of § 122.183(b). Doing so would allow Salman to tailor his response in an appeal in a more pointed, effective manner. *See* 19 C.F.R. § 122.183(c) (requiring applicant in initial appeal to "set forth the response of the applicant to the statement of the port director") and (d) (requiring applicant to do the same in an appeal of the denial of application on appeal); *see also Cheney*, 479 F.3d at 1352.

The Court thus finds that Defendants had to provide Salman the "detailed reasons" for his denial, which should have at least included citation to a specific provision or reason provided in the Regulation. Nonetheless, this conclusion does not entitle Salman to the specific facts underlying the port director's determination.

13

*See Amiri*, 818 F. App'x at 529 (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019)) ("'[T]he consular officer need not disclose the underlying facts that led him to conclude that the statute was satisfied.'")). This is especially true in matters relating to national security.

Defendants contend that "[d]isclosure of additional information is not appropriate because of the national security context." ECF No. 38, PageID.531; *see also* ECF No. 36, PageID.472, 480-482 & n.4 (mentioning "national security" issues). However, if "national security" was the basis for his denial, simply stating that generally in his denial letter likely would have been sufficient.[2] That is not to say that the port director had to detail what the national security interests were or why they prohibited security clearance. However, Defendants' letter, as drafted, was too broad—as it relied on *all* of the bases that may justify denial instead of homing in on the specific reason for denial. *See* ECF No. 34-3. And under the Regulation,

---

[2] The Court acknowledges Defendants' concern about "[p]roviding fewer options for the denial," and that even stating that Salman "posed a threat to national security . . . may not have accurately reflected the content of the restricted material" and would be "more specific than the Government is often able to provide in cases involving national security." ECF No. 36, PageID.482 n.4. But the Regulation is clear: the notice sent to the applicant must fully state the detailed reasons for the denial. Citing the entire regulation, which provides numerous grounds for denial, provides no details and certainly cannot be read to "fully" explain any basis for denial. It also certainly does not allow a denied applicant to appeal their denial in a meaningful way. *See Cheney*, 479 F.3d at 1352. And because agencies must follow their own regulations, *Accardi*, 347 U.S. at 267-68, Defendants' failure to provide a detailed explanation of the basis for their denial means they failed to follow their own regulation.

that's problematic because it gives Salman no meaningful way to respond to the denial in an appeal.

Defendants further argue that Salman's APA claim could only move forward if CBP failed to take a discrete agency action it is required to take. *See* ECF No. 36, PageID.483-484. Here, they say, that was the discretionary act of "issuing a letter that complied with all applicable statutes, regulations, and Executive Orders, read harmoniously." *Id.* And they argue that "[a]ny complaints about the amount of information provided enter the realm of the Port Director's discretion," which renders those complaints "inappropriate for relief under § 706." *Id.* The Court disagrees.

The port director has the discretion to determine whether to deny the Customs access seal and whether the applicant's access to the Customs security area will "endanger the revenue or the security of the area or pose an unacceptable risk to public health, interest or safety, national security, or aviation safety." *See* 19 C.F.R. § 122.183(a) ("[I]n the judgment of the port director"). But the "notification of denial" subsection at issue here contains no such discretionary language. *See* 19 C.F.R. § 122.183(b). It instead mandates that the port director "*shall* give written notification" of the denial, which must "fully stat[e] the reasons for [the] denial" and give the applicant the "specific appeal procedures." *Id.* (emphasis added). The Court therefore rejects Defendants' discretion argument.

### B. Harmless Error

Defendants argue that even if the Court finds that they failed to provide enough detail, any violation of CBP's regulations did not prejudice Salman on the merits nor deprive him of a substantial right. *See* ECF No. 36, PageID.485-489. On this point, the Court agrees.

Though agencies must follow their own regulations, courts typically review administrative agency decisions for harmless error. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009); *see NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (observing that courts need not "convert judicial review of agency action into a ping-pong game" if "remand would be an idle and useless formality"). So, "if an agency has failed to adhere to its own procedures," remand for further administrative proceedings is inappropriate unless "the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Rabbers*, 582 F.3d at 654 (quotation marks and citations omitted).

The question here is whether Defendants' procedural lapses prejudiced Salman on the merits of his claim or deprived him of substantial rights. Neither avenue provides Salman relief. Defendants' procedural lapses did not prejudice Salman on the merits. As Defendants note, the Court viewed the full record and is

satisfied with the basis for denying Salman a Customs seal.[3]  Additionally, the procedural lapses did not deprive Salman of a substantial right.  Like security clearances, no one has a right to a Customs access seal, and Salman has not identified any authority suggesting otherwise.  *See Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988).  The Court therefore finds any error by Defendants in failing to comply with CBP regulation harmless, and for that reason, remand would be inappropriate.  *See Rabbers*, 582 F.3d at 654.

### IV.

Accordingly, the Court holds that Defendants' denial letter was insufficient to meet the requirements of its own regulations (*see* 19 C.F.R. § 122.183(b)); however, failure to adhere to the notice requirements here was harmless because it did not prejudice Plaintiff or deprive him of any substantial rights.  Consequently, the Court **DENIES** Plaintiff's Motion (ECF No. 34), **GRANTS** Defendants' Cross-Motion

---

[3] The Court notes that the Defendants did lodge two separate portions of the Administrative Record for the Court to review *ex parte*, *in camera* due to the sensitive and privileged nature of the documents and the classification as national security information. *See* ECF No. 27.  A review of those records satisfied the Court that Defendants did in fact have a basis for denying Salman a Customs seal.  Therefore, any failure to follow agency procedure did not result in prejudice to Salman.  *See Rieth-Riley Constr. Co., Inc. v. Kerwin*, No. 24-1690, 2025 WL 1304812, at *4 (6th Cir. May 6, 2025) (quoting *Battle v. F.A.A.*, 393 F.3d 1330, 1336 (D.C. Cir. 2005)) ("*Accardi* has come to stand for the proposition that agencies may not violate their own rules and regulations *to the prejudice of others*.") (internal quotation marks omitted; emphasis added).

(ECF No. 36), and **DISMISSES WITH PREJUDICE** Plaintiff's Amended Complaint (ECF No. 20).

    **IT IS SO ORDERED**.

Dated: June 13, 2025                                     s/Brandy R. McMillion
                                                                         BRANDY R. MCMILLION
                                                                         United States District Judge